T.C. Memo. 2000-324


UNITED STATES TAX COURT


ESTATE OF HENRY A. LASSITER, DECEASED, PAULA ANN MASTERS
LASSITER, ADMINISTRATOR, C.T.A., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17643-98.                    Filed October 19, 2000.


        D executed a will in 1970 which set forth a
testamentary plan placing the majority of D's property
into two trusts.  The terms of one trust are such that
a marital deduction is available for assets passing
thereto.  The other, residuary, trust does not as
written satisfy the requirements for such a deduction,
largely by reason of interests therein granted to
persons other than D's surviving spouse.  Following D's
death in 1994, beneficiaries of his estate executed a
series of disclaimers in an attempt to enable the
residuary trust to qualify for the marital deduction
under sec. 2056(b)(7), I.R.C.  When this deduction was
claimed for Federal estate tax purposes, it was
disallowed by R.

        <u>Held</u>:  The estate is entitled to a deduction
pursuant to sec. 2056(b)(7), I.R.C., for property
placed in the residuary trust established under D's
1970 will.

David D. Aughtry and Charles E. Hodges II, for petitioner.

David Delduco and Clinton M. Fried, for respondent.

MEMORANDUM OPINION

NIMS, Judge:  Respondent determined a Federal estate tax deficiency in the amount of $14,330,496 for the Estate of Henry A. Lassiter (the estate).  Pursuant to Rule 122, the parties have submitted fully stipulated the sole issue of whether, after giving effect to various disclaimers, the estate is entitled to a deduction under section 2056(b)(7) with respect to an interest transferred in trust from Henry A. Lassiter (Mr. Lassiter or decedent) to his surviving spouse.  If this legal question is answered in the negative, further proceedings will be required to establish the value of certain property held by Mr. Lassiter at the time of his death.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

As this case was submitted fully stipulated, the facts are so found.  The stipulations of the parties, with accompanying

exhibits, are incorporated herein by this reference. We set forth below such factual information as is useful in understanding our decision.

Mr. Lassiter was a citizen of the United States and a domiciliary of Clayton County, Georgia, when he was killed in an automobile accident while in Singapore on May 9, 1994. He was 48 years of age. His surviving spouse, Paula Ann Masters Lassiter (Mrs. Lassiter), is the administrator of the estate. At the time the petition in this case was filed, Mrs. Lassiter resided in Morrow, Georgia. The estate has at all relevant times been administered by the Probate Court of Clayton County, Georgia (Probate Court).

In addition to his wife, Mr. Lassiter was also survived by their four daughters: Cathy Lassiter Smith (Cathy), Cindy Elaine Lassiter (Cindy), Christy Lynn Lassiter (Christy), and Cheryl Marie Lassiter (Cheryl). As of the date of their father's death, Cathy, Cindy, Christy, and Cheryl were 25, 23, 19, and 15 years of age, respectively, and Cathy was married to Paul A. Smith.

The Testamentary Disposition

On May 26, 1994, an order and letters of administration were issued by the Probate Court admitting to probate a will of Mr. Lassiter dated August 7, 1970. The 1970 will, in addition to providing for payment of debts and burial expenses and making specific bequests of personal effects, set forth a testamentary

plan establishing two trusts to be funded by the remainder of Mr. Lassiter's probate assets. Item IV of the will specified the amount to be placed in a trust over which Mrs. Lassiter was given a general power of appointment by directing the trustee to:

> (1) determine the value of my entire estate passing under this Will, (2) add thereto the value of any and all insurance and other property passing outside of this Will but includable in my estate for Federal Estate Tax purposes, (3) deduct therefrom all debts and expenses of administration allowed as a deduction for Federal Estate Tax purposes but not any estate or inheritance tax, (4) ascertain one-half of the remainder, (5) deduct from such one-half the value of any and all insurance and other property passing to my said wife either outside this Will or under any other item of this Will in such manner as to qualify as a part of the marital deduction under the Federal Estate Tax Law, and (6) the remainder of such one-half shall be the value of the part of my estate bequeathed in this Item.

The trustee of this trust was further told to pay all income therefrom to Mrs. Lassiter, in semiannual or more frequent installments, and was authorized "to encroach on the corpus of the property" as necessary to provide for Mrs. Lassiter's "proper support and comfort".

A second, residuary, trust was then created under Item V of the will for all probate property not otherwise disposed of through the above-described provisions. Pursuant to the governing terms set forth in Item V, the trustee of this trust was instructed as follows:

> (b) Said Trustee shall hold and manage said property and shall use such part of the income and/or principal thereof as it may deem necessary to provide

for the support in reasonable comfort of my wife, and to provide for the support and education of my children and the descendants of any deceased child of mine. After any child has finished his education, or in normal course should have completed his education, the Trustee shall not be required to make any payment for the support of such child or his descendants unless in the judgment of the Trustee there is ample property to support my wife and educate my children or such child is unable to support himself. To the extent practicable, however, I desire my Trustee in making encroachment for the benefit of my wife to encroach first on the trust created for my wife in Item IV hereof before encroaching on this trust; but this request shall not apply to the extent it would be necessary to sell property which in the opinion of the Trustee should not be sold in order to encroach first on such trust.

(c) My said wife shall have the power at any time and from time to time by instrument in writing signed by her and delivered to the Trustee, to direct the Trustee to turn over any part of the property in this trust to or among such of my descendants, or spouses of such descendants, and in such manner, in trust or otherwise, as my said wife may in such instrument direct or appoint, provided that she shall have no power to appoint said property to herself, to her estate, to her creditors or to the creditors of her estate.

(d) On the death of my said wife, the property then remaining in this trust shall be distributed to or among such of my descendants, and in such manner, in trust or otherwise as my said wife may by her Last Will and Testament direct or appoint, provided that she shall have no power to appoint said property to herself, to her creditors, to her estate or to the creditors of her estate.

(e) Should my said wife fail to exercise her power of appointment as to all of the property in this trust, or should she predecease me, then on my death or on the death of my said wife, whichever last occurs, the property of this trust as to which she fails to

exercise such power of appointment shall be divided into as many separate and equal shares as I have children then living and deceased children with descendants then living.

Mr. Lassiter's will appointed First National Bank of Atlanta as the initial trustee of the trusts created therein. Beneficiaries entitled to more than 50 percent of the income from his estate and testamentary trusts were authorized at any time to remove the trustee and to appoint a successor corporate trustee. In such event Item X directed: "Any successor Executor or Trustee appointed as herein provided, or appointed according to law, shall have and may exercise all of the rights, powers and duties herein conferred upon the Executor and Trustee as fully and to the same extent as if such successor had originally been named as Executor or Trustee."

The powers and duties conferred upon the trustee for purposes of administering "every trust" established under the 1970 will were set forth in Item XII. Among the powers so enumerated were the following:

> (a) To hold in their discretion any part of the estate to be administered in its form or condition at the time said fiduciaries qualify as the fiduciaries of said estate, * * *

> (b) To make and change investments, converting personal property into real property and the reverse whenever they think it advisable * * * ; to purchase and hold for investment unproductive and unimproved real estate * * *

> * * * * * * *

(h) They may apportion or allocate all ordinary and extra dividends and gains from sales of unproductive real estate or from sales of any other part of the corpus and any other receipt or receipts and all expenditures and payments and all losses of income during alterations or improvements of real estate, between income and principal as to them seems fair and just, and any such apportionment or allocation, including the right to amortize or fail to amortize any part of the premium or discount, made in good faith shall be final. * * * They may in general use their discretion in determining the questions as to what receipts and what payments are income and principal, which discretion exercised in good faith shall be final;

The Disclaimers

After Mr. Lassiter's death and at the request of Mrs. Lassiter and the Lassiter children, First National Bank of Atlanta declined and renounced its right to serve as the named trustee.  Accordingly, on February 6, 1995, in her role as administrator of her husband's estate, Mrs. Lassiter filed with the Probate Court three petitions.  Therein she requested that she be appointed trustee of the trusts created under Items IV and V of the 1970 will, that authority be granted to the trustee to disclaim trust powers, that a guardian ad litem be appointed to represent the interests of minor daughter Cheryl and all unborn and unascertained beneficiaries of the Item V trust, and that such guardian ad litem be authorized to execute disclaimers of interests in the Item V trust on behalf of the represented beneficiaries.  By orders dated February 6, 1995, the Probate

Court granted each of these petitions.  Jack R. Hancock was designated as the guardian ad litem for the minor, unborn, and unascertained beneficiaries.

Also on February 6, 1995, eight disclaimers were executed and filed with the Probate Court.  Six of these instruments, namely, those executed by the three adult Lassiter children, by Cathy's spouse Paul A. Smith, by the guardian ad litem on behalf of minor child Cheryl, and by the guardian ad litem on behalf of Mr. Lassiter's unborn and unascertained descendants, are substantially identical.  Each by its terms renounces any interest in the Item V trust during the life of Mrs. Lassiter, as follows:

RENOUNCEMENT OF SUCCESSION AND DISCLAIMER OF PROPERTY

HENRY A. LASSITER (the "Decedent"), of Clayton County, Georgia, died on May 8, 1994.  The Decedent left a written will dated August 7, 1970 (the "1970 Will"), which was duly admitted to probate as the Decedent's Last Will and Testament by the Probate Court of Clayton County, Georgia on May 26, 1994.

The Decedent's wife (Paula Ann Masters Lassiter, hereinafter referred to as "Mrs. Ann Lassiter") and descendants are beneficiaries under the Residuary Trust established under Item V of the 1970 Will (the "Residuary Trust").  The 1970 Will is recorded at Docket Book R, Page 122, in the Probate Court of Clayton County, Georgia.  A subsequent will which bequeaths and devises substantially all of the Decedent's property to Mrs. Ann Lassiter is believed to exist but cannot be found.

The Decedent's daughter, CATHY LASSITER SMITH, now desires to fulfill her understanding of her father's intentions [or similar language appropriately designating the disclaimant] by disclaiming,

renouncing, and refusing any and all rights, title, and interest in the principal and income of the Residuary Trust during the life of Mrs. Ann Lassiter, including without limitation, all rights as a beneficiary under the inter vivos power of appointment provided under Paragraph (c) of the 1970 Will, any right or interest to have income withheld from the income beneficiary or accumulated during the lifetime of Mrs. Ann Lassiter, and any right or interest to cause the Trustee of the Residuary Trust to so withhold or accumulate income (all rights, title and interests described in this paragraph being herein referred to as the "Disclaimed Property Interest").

NOW THEREFORE, CATHY LASSITER SMITH [or other disclaimant], having neither accepted nor received any of the benefits of the Disclaimed Property Interest, and hereby acknowledging that she has not and will not receive consideration in exchange for executing this disclaimer, and in accordance with O.C.G.A. Section 53-2-115, hereby irrevocably and unqualifiedly disclaims, renounces and refuses to accept any and all rights, title and interest (including, but not limited to, rights in intestacy) in the Disclaimed Property Interest.

Except for this disclaimer and refusal to accept any interest in the Disclaimed Property Interest, CATHY LASSITER SMITH [or other disclaimant] does not disclaim nor does she refuse to accept any rights, title or interest in any other property interest other than the Disclaimed Property Interest, including, without limitation, any remainder interest passing under said 1970 Will which she would receive or otherwise be entitled to receive as a result of the Decedent's death.

Mrs. Lassiter, in her personal capacity, also executed a disclaimer which contains introductory material akin to that quoted above and reads in relevant part:

Paragraph (c) of Item V of the 1970 Will bestows upon Mrs. Ann Lassiter an inter vivos special power of appointment ("Residuary Trust Inter Vivos Power of

Appointment"). Additionally, Item V contains no directive nor authority for the trustee to accumulate trust income.

The Decedent's surviving spouse, MRS. ANN LASSITER, now desires to fulfill her understanding of her husband's intentions by disclaiming, renouncing, and refusing any and all rights, powers, and interest in the Residuary Trust Inter Vivos Power of Appointment. Additionally, in order to avoid any possible confusion, MRS. ANN LASSITER desires to disclaim, renounce, and refuse any right or interest in having the income of the Residuary Trust withheld from the income beneficiary or accumulated and any right or interest to cause the Trustee of the Residuary Trust to so withhold or accumulate income which may be said to exist under the terms of the Residuary Trust or under applicable Georgia law (hereinafter the "Accumulation Interest").

A further disclaimer was executed by Mrs. Lassiter in her capacity as trustee. As pertinent to the case at bar, this instrument states:

Paragraph (b) of Item V of the 1970 Will requires the Trustee to distribute income and/or principal to the descendants of the Decedent for their support and education as the Trustee deems necessary ("Trustee Power to Distribute to Decedent's Descendants"). Paragraph (b) contains no directive or authority to withhold from the income beneficiary or accumulate trust income.

*     *     *     *     *     *     *

NOW THEREFORE, the Trustee, on behalf of herself and all successors and assigns, in accordance with O.C.G.A. Section 53-2-115, having neither exercised nor accepted any of the above-described powers as trustee, hereby (i) affirms that under both Georgia law and the terms of the Residuary Trust the Trustee has no directive, power, or authority to withhold from the income beneficiary or accumulate income under the Residuary Trust; (ii) irrevocably and unqualifiedly disclaims, renounces and refuses such Trustee Power to Distribute to Decedent's Descendants; (iii) irrevocably

and unqualifiedly disclaims, renounces and refuses any directive, power or authority that may be said to exist to withhold from the income beneficiary or accumulate income as Trustee under the Residuary Trust during the lifetime of the surviving spouse; (iv) irrevocably and unqualifiedly disclaims, renounces and refuses any directive, power or authority that may be said to exist to acquire or retain unproductive property during the lifetime of the surviving spouse without the surviving spouse's consent; and (v) irrevocably and unqualifiedly disclaims, renounces and refuses any directive, power or authority that may be said to exist to treat any receipt or other item as principal which is properly treated under applicable law as income.

Additionally, attached to the trustee's disclaimer is a statement declaring that "The Decedent's Descendants hereby join in and consent to the provisions set forth in this RENOUNCEMENT OF SUCCESSION AND DISCLAIMER OF PROPERTY".  The consent statement is signed by Cathy, Cindy, Christy, Jack R. Hancock as guardian ad litem for Cheryl, and Jack R. Hancock as guardian ad litem for unborn and unascertained descendants.

The Trust Assets

At the time the 1970 will was executed, the Lassiters were a young couple with one child and no income-producing assets.  As of Mr. Lassiter's date of death, the assets passing to his estate and utilized to fund the trusts created under his will consisted primarily of the following:  (1) 98 percent of the class A common stock (voting) and 100 percent of the class B common stock (nonvoting) in Micro Design International Holding, Inc., and Subsidiaries (MDI); (2) 100 percent of the common stock (voting) in Lassiter Properties, Inc. (Lassiter Properties); (3) partner

and shareholder interests in real estate partnerships and S corporations; and (4) real estate directly owned by decedent.

Since her husband's death, Mrs. Lassiter has controlled the day-to-day operations and strategic decisions relating to the above-described assets. She has also continuously possessed signature authority over the approximately 50 bank accounts relating to these assets.

As administrator and trustee under the 1970 will, Mrs. Lassiter votes 98 percent and 100 percent of the voting stock in MDI and Lassiter Properties, respectively, and thereby controls their boards of directors. She serves as chairman of the board of both MDI and Lassiter Properties, and has done so since Mr. Lassiter's death. She was also chief executive officer of both companies until designating Cathy as CEO of Lassiter Properties in December of 1998. Among the business matters controlled by Mrs. Lassiter in her various roles at MDI and Lassiter Properties are selection of management; hiring, firing, and compensation of employees; and declaration of dividends. Major corporate transactions likewise fall within her sphere of responsibility, as evidenced by her decision that MDI would declare bankruptcy on June 21, 1999, due to a decline in business after 1994.

In addition to her duties above as a corporate director and officer, Mrs. Lassiter actively manages, reviews, and executes the real estate leases pertaining to properties owned directly,

owned by the real estate partnerships and S corporations, and owned by Lassiter Properties.  These leases consist, during each annual period, of approximately 54 instruments for hunting, fishing, and recreation.  Mrs. Lassiter also makes all final sale and acquisition decisions relating to the land and timber held directly and by Lassiter Properties.  Similar decisions relating to properties held by the real estate partnerships and S corporations are made by both Mrs. Lassiter and the other partner or shareholder, subject to each other's approval.

The Estate Tax Return and Notice of Deficiency

On August 8, 1995, a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, was timely filed for Mr. Lassiter's estate.  The return indicates that the Item IV trust was not funded; rather, all assets covered by the trust provisions of the 1970 will were treated as passing into the Item V trust.  A marital deduction was then claimed under section 2056(b)(7) with respect to property passing into the Item V trust.  Respondent issued a notice of deficiency on August 6, 1998, disallowing this deduction on the grounds that "the decedent's surviving spouse does not have a qualifying income interest for life in the residuary trust established pursuant to Item V of the Last Will and Testament of the decedent." Respondent, however, permitted a marital deduction equal to one-half of the adjusted gross estate, in accordance with the terms

set forth in Item IV of Mr. Lassiter's will.  The parties have further stipulated that the trust created by Item IV qualifies under section 2056(b)(5) for the marital deduction.  Mrs. Lassiter, as administrator of her husband's estate, filed a petition with this Court on November 4, 1998, seeking redetermination of respondent's disallowance.

## Discussion

### I.  Contentions of the Parties

Respondent contends that the marital deduction claimed by the estate is properly disallowed on either of two primary bases. First, accepting as true statements by family members regarding their belief that Mr. Lassiter executed a more recent will or codicil which could not be found, respondent asserts that the 1970 will was revoked by operation of Georgia law.  Hence, according to respondent, Mr. Lassiter died intestate, and trust provisions contained in the 1970 will cannot serve as grounds for a marital deduction.

In the alternative, even if the 1970 will is deemed effective, respondent maintains that the terms of the trust set forth in Item V preclude Mrs. Lassiter's interest therein from constituting qualified terminable interest property (QTIP) as necessary for the section 2056(b)(7) deduction.  Respondent further avers that the disclaimers executed by the beneficiaries and trustee fail to cure, among other things, the fact that

distributions of income are limited by an ascertainable standard, which is inconsistent with the QTIP requirement that the surviving spouse be entitled to all income from the trust property.

Conversely, the estate argues that respondent's position regarding revocation of the 1970 will is both procedurally and substantively misplaced. The estate claims that the issue of revocation was not pleaded and raised for the first time on brief, such that its consideration would be prejudicial to the estate at this stage in the litigation. Moreover, it is the estate's position that no evidence exists sufficient to support a finding of revocation under Georgia law.

Thus treating the 1970 will as valid and controlling, the estate contends that, after giving effect to the various disclaimers, a QTIP deduction under section 2056(b)(7) is appropriate with respect to the property passing to the Item V trust. The estate avers that the disclaimers and Georgia law enable the residuary trust to comport with the statutory requirement that the surviving spouse be entitled to all income, distributable at least annually. Furthermore, the estate maintains that case law demands a broad and liberal interpretation of the marital deduction and, at the very least, that the disclaimers render the disposition here consistent with

the statute's underlying policies and with regulations allegedly implying that substantial compliance is a proper standard for evaluating deductibility under section 2056(b)(7).

## II.  Preliminary Matters

Before turning to the substantive questions raised by the parties' contentions, we first address several evidentiary objections.  Respondent objects to certain of the stipulated facts and exhibits primarily on grounds of relevancy.  Respondent additionally argues that consideration of these items would conflict with the principle of Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974), that this Court will not look behind a deficiency notice to examine respondent's motives or administrative actions in making the determination.  The estate counters that the materials are relevant and that some particularly should come in as admissions by respondent under rules 801(d)(2) and 804(b)(3) of the Federal Rules of Evidence.

Relevance is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Evidence meeting this standard is admissible, while irrelevant evidence is not.  See Fed. R. Evid. 402.  We conclude that the evidence in question falls short of this relevancy threshold.

With the exception of the affidavit by Rufus A. Chambers, discussed below, all of the disputed items relate either to the estate's attempts to obtain a private letter ruling in this matter or to respondent's internal communications in preparing the statutory notice.  To the extent that these materials contain pertinent factual information, such facts are otherwise present in the record by means of uncontested stipulations and exhibits. To the extent that the documents contain respondent's legal conclusions, they are without a place in our analysis.  As we have previously established, "a trial before the Tax Court is a proceeding de novo; our determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level." Greenberg's Express, Inc. v. Commissioner, supra at 328.  In carrying out this mandate here, we cannot substitute selected conclusions made by respondent in administrative papers for our own.  We instead must engage in an independent review of the facts and application of law thereto.  The disputed materials thus are basically superfluous, and we sustain respondent's objections.

With respect to the affidavit of Mr. Chambers, the parties focus their arguments on the standards for admissibility of parol evidence to aid in construction of a will.  The affidavit of Mr. Chambers, the attorney who drafted the 1970 will, was prepared

nearly 30 years later in anticipation of litigation. Therein, Mr. Chambers purports to recall the intentions underlying certain portions of the testamentary language. Since this case was submitted fully stipulated under Rule 122, we have had no opportunity to view the demeanor of this witness, to obtain any information regarding the basis for and extent of his memory of conversations with Mr. Lassiter, or to assess his credibility. In this context, we are unwilling to rely on or give any weight to Mr. Chambers' statements. Hence, to engage in a parsing of the complex area of law relating to parol evidence would be a moot and futile exercise. We shall sustain respondent's objection. To summarize, we shall exclude stipulated paragraphs 12, 13, 14, 15, 25, and 52, and Exhibits 9-P, 10-P, 11-P, 12-P, 13-P, 26-P, 27-P, 28-J, 29-J, and 30-J.

## III.  Revocation of 1970 Will

Since a determination that the 1970 will has been revoked would obviate any need to scrutinize its terms and the impact thereon of the 1995 disclaimers, we begin our substantive discussion with the issue of its effectiveness. Documents filed with both this Court and the Probate Court reference a belief on the part of members of the Lassiter family that a more recent will or codicil existed but could not be located. For instance, each of the eight disclaimers recites that "A subsequent will which bequeaths and devises substantially all of the Decedent's

property to Mrs. Ann Lassiter is believed to exist but cannot be found."  Similarly, the petition to this Court contains the following:

>   On several occasions in the two year period prior to his death, Henry told a number of his friends and business associates that he had executed a new Will that would make sure that his estate passed to his wife and children estate tax free (with the effect of deferring the estate tax liability until the death of his wife).
>
>   Unfortunately, when Henry died, no such Will could be found.  An exhaustive search was made and yet the most recent Will that could be located was a 1970 instrument ("1970 Will") containing an outdated fifty percent marital deduction formula trust ("Marital Trust") and a residuary trust ("Residuary Trust").

The significance attached by respondent to these averments appears to have shifted to some degree throughout the litigation process.  The answer states that respondent "Alleges that the only will at issue is the Will probated by the court; * * * that the will probated by the Court is dispositive of the decedent's intent for Federal estate tax purposes; and that parol or extrinsic evidence is inadmissible to alter the terms of the decedent's will."  A like pronouncement is made in the stipulation of facts signed by the parties on November 1, 1999: "It is Respondent's assertion that the 1970 Will is the only will of the decedent and that it had not been revoked prior to his death and was the only will admitted to probate; Petitioner maintains that a more recent will or codicil exists but cannot be

found."   However, the supplemental stipulation of facts which the

parties signed on December 13, 1999, includes the language below:

> The 1970 Will was drafted by Rufus A. Chambers, a
> member of the Georgia Bar.  A true and correct copy of
> his affidavit is attached hereto as Exhibit 27-P and is
> accepted as his testimony subject to the following
> objections.  Respondent contends that under Georgia law
> the 1970 Will has been revoked * * * . * * * Petitioner
> does not consent to consideration of Respondent's
> revocation contention and, in addition to substantive
> objections, objects to it on the grounds that it would
> constitute a new matter.

From a procedural standpoint, it is well settled that the

Commissioner's determination may be affirmed for reasons other

than those assigned in the statutory notice of deficiency.  See

Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973).  At

the same time, however, it is equally the general rule of this

Court that issues which are not properly pleaded and which are

raised for the first time on brief will not be considered when to

do so would surprise and prejudice the opposing party.  See DiLeo

v. Commissioner, 96 T.C. 858, 891-892 (1991), affd. 959 F.2d 16

(2d Cir. 1992); Markwardt v. Commissioner, 64 T.C. 989, 997

(1975); Estate of Horvath v. Commissioner, supra at 555.  Such

prejudice arises when the opposing party would be prevented from

presenting evidence that might have been offered if the issue had

been timely raised.  See DiLeo v. Commissioner, supra at 891;

Estate of Horvath v. Commissioner, supra at 555.

In the instant case, we acknowledge that respondent's earlier filings contain statements which would seem to negate any intent to rely on a revocation theory. Nonetheless, we also note that it is at least questionable whether there exists the type of potential for prejudice that should preclude its consideration. The above-described rule focuses primarily on an inability to present evidence. Here, however, both parties are apparently willing to accept that there is no evidence which could be produced to establish specifics regarding the creation, content, and disappearance of the alleged instrument. They rather are primarily arguing about the legal consequences of this absence. Given these rather unusual circumstances and because, as explained below, we agree with the estate's interpretation of the substantive Georgia law, we find it unnecessary, and decline, to rest our disposition of this issue on procedural grounds alone.

The interpretation of wills, with respect to determining the legal rights and interests created thereunder, is governed by State law. See Helvering v. Stuart, 317 U.S. 154, 161-162 (1942); Morgan v. Commissioner, 309 U.S. 78, 80-81 (1940). The parties here do not dispute that the relevant body of law is that of the State of Georgia, and we so proceed.

Ga. Code Ann. section 53-2-72 (1997) reads as follows:

53-2-72. Distinction between express and implied revocation.

(a) A revocation may be either express or implied.

> (b) An express revocation is effected when the maker by writing or action annuls the instrument. It takes effect instantly, independently of the validity or ultimate fate of the will or other instrument containing the revocation.
>
> (c) An implied revocation results from the execution of a subsequent inconsistent will. It takes effect only when the subsequent inconsistent will becomes effectual. If, from any cause, the subsequent inconsistent will fails, the implied revocation is not completed.

Ga. Code Ann. section 53-2-73(a) (1997) then further provides: "An express revocation by written instrument shall be executed with the same formality and attested by the same number of witnesses as are requisite for the execution of a will."

Applying these principles to the matter at bar, we first conclude that no implied revocation has occurred. If Mr. Lassiter in fact executed a will or codicil merely inconsistent with the disposition in the 1970 will, but not explicitly revoking the earlier instrument, such revocation has never been completed because the later document, having been lost or destroyed without a trace, never became effectual.

We thus turn to whether the estate's statements are sufficient to establish an express revocation under Georgia law, and we again conclude that they are not. As regards the type of proof necessary to show express revocation, the Supreme Court of Georgia explained in Driver v. Sheffield, 85 S.E.2d 766, 767 (Ga. 1955):

> While revocation of a will cannot be established by proof of parol declarations by the testator, * * * a clause in a later written instrument, properly executed by the testator, expressly revoking a former will is not rendered ineffective merely by the loss or destruction of the instrument which contains it, and proof of the revocation clause in a later lost or destroyed will may be made by parol.  Probate of the former will may be defeated upon proof of the execution of the later writing by the testator, which contained a clause revoking the prior will, and the loss or destruction of the later instrument, without proof of the rest of the contents of the lost or destroyed instrument. * * *

The intestate heirs challenging the will in Driver v. Sheffield, supra at 767, specifically alleged that the later will was executed in due form and contained a clause revoking any prior wills.  Hence, based on the rule quoted above, the court reversed an earlier decision which had dismissed the challenge.  See id. The Supreme Court of Georgia then further elucidated the meaning of this holding by subsequently opining in another alleged revocation case:  "We note that had there been sufficient proof that the 1981 will was validly executed and had been revoked by destruction, the 1975 will would not have been revived absent republication.  OCGA § 53-2-73; Driver v. Sheffield, 221 Ga. 316, 85 S.E.2d 766 (1955)."  Rawlins v. Hulme, 425 S.E.2d 861, 862 n.1 (Ga. 1993).

These judicial pronouncements convince us that where, as here, a record is devoid of any evidence going to the existence of an explicit revocation clause or the elements of proper execution (i.e., witnesses and other formalities), or even any

allegations thereof by a person in a position to have knowledge of the decedent's actions, the Supreme Court of Georgia would not find an express revocation to have been effected. Moreover, we cannot deny the logic of the following remarks by the estate on brief:

> Respondent seeks to inject the mixed contention of fact and law that the full Marital Deduction Will Henry said he had was, unbeknownst to the Estate, (i) executed by Henry, (ii) signed by the required number of witnesses, (iii) with the requisite formalities, and (iv) contained a clause revoking the 1970 Will. The great irony is that Henry's family and friends searched high and low for sufficient evidence to prove the existence and content of the full Marital Deduction Will for probate purposes. That evidence would have resolved this entire dispute but it could not be found. Consequently, both parties are left to cope with the obsolete 1970 Will.

We therefore proceed on the basis that the 1970 will has not been revoked under Georgia law.

IV. <u>Qualification for Marital Deduction</u>

We next address whether the interest received by Mrs. Lassiter under the 1970 will, as modified by the 1995 disclaimers, qualifies for the marital deduction pursuant to section 2056(b)(7). Section 2056(b)(7) was enacted as part of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, sec. 403(d)(1), 95 Stat. 172, 302. Prior to 1981, no marital deduction had been permitted for the type of interest now sanctioned by this provision. ERTA also effected another significant change to the marital deduction statute in that it

repealed former section 2056(c), thus creating a deduction unlimited in amount.  See ERTA sec. 403(a)(1)(A), 95 Stat. 301. At the time of its repeal, section 2056(c) had limited the aggregate deduction to the greater of $250,000 or 50 percent of the value of the adjusted gross estate.  At the time the 1970 will was drafted, the limitation contained in section 2056(c) was simply 50 percent of the adjusted gross estate's value.

The estate now seeks through the various disclaimers to take advantage of these changes and to obtain a greater deduction than would be afforded by placing up to half of Mr. Lassiter's assets in the Item IV trust.  As a threshold matter, however, the estate will be unable to do so if bound by the transitional rule in section 403(e)(3) of ERTA, 95 Stat. 305.  Section 403(e)(3) of ERTA retains the former aggregate amount limitation if four conditions are met:

(A) the decedent dies after December 31, 1981,

(B) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed before the date which is 30 days after the date of the enactment of this Act, or a trust created before such date, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,

(C) the formula referred to in subparagraph (B) was not amended to refer specifically to an unlimited marital deduction at any time after the date which is 30 days after the date of enactment of this Act, and before the death of the decedent, and

(D) the State does not enact a statute applicable to such estate which construes this type of formula as referring to the marital deduction allowable by Federal law as amended by [section 403(a) of ERTA] * * *

The transitional rule thus applies only in circumstances where there exists "a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law".  Given this language, we believe that only a very strained reading of the term "expressly" could expand its reach to cover a situation where, as here, the instrument in question does not use the phrase "maximum marital deduction".  Respondent has cited and our research has revealed no cases holding that a mere percentage bequest constitutes a formula within the meaning or intent of section 403(e)(3) of ERTA.  See Estate of Levitt v. Commissioner, 95 T.C. 289 (1990).  We decline to do so now and conclude that the 1970 will is not subject to the transitional rule.  We apply section 2056 as in effect at Mr. Lassiter's date of death.

This statute provides in relevant part:

SEC. 2056.  BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) Allowance of Marital Deduction.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(b) Limitation in the Case of Life Estate or Other Terminable Interest.--

(1) General rule.--Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest--

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

* * * * * * *

(7) Election with respect to life estate for surviving spouse.--

(A) In general.--In the case of qualified terminable interest property--

(i) for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and

(ii) for purposes of paragraph (1)(A), no part of such property shall be treated as passing to any person other than the surviving spouse.

(B) Qualified terminable interest property defined.--For purposes of this paragraph--

(i) In general.--The term "qualified terminable interest property" means property--

(I) which passes from the decedent,

(II) in which the surviving spouse has a qualifying income interest for life, and

(III) to which an election under this paragraph applies.

(ii) Qualifying income interest for life.--The surviving spouse has a qualifying income interest for life if--

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. * * *

(iii) Property includes interest therein.--The term "property" includes an interest in property.

(iv) Specific portion treated as separate property.--A specific portion of property shall be treated as separate property.

(v) Election.--An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001.  Such an election, once made, shall be irrevocable.

In other words, section 2056(a) generally allows an unlimited deduction against estate tax liability for property transferred to a surviving spouse, but section 2056(b)(1) creates an exception denying the deduction when the spouse's interest takes a form, such as a life estate in trust, which will terminate in favor of another beneficiary.  Section 2056(b)(7) is among several exceptions to the exception and allows a deduction for so-called QTIP, qualified terminable interest property.

In the matter before us, the parties do not dispute that an interest in the Item V trust passed to Mrs. Lassiter from decedent or that a timely QTIP election was made on the estate tax return.  At issue then is whether such interest constitutes a qualified income interest for life.  Furthermore, since the estate, appropriately, does not contend that the Item V trust as originally set forth in the 1970 will qualifies for the marital deduction, the dispositive issue can be framed more specifically as whether the 1995 disclaimers render the trust eligible for QTIP treatment.

Regulations promulgated under section 2056 contemplate that disclaimed property may be treated as passing to the surviving spouse within the meaning of the statute.  Section 20.2056(d)-2(b), Estate Tax Regs., provides in this regard:

> If an interest in property passes from a decedent to a person other than the surviving spouse, and the interest is created in a transfer made after December 31, 1976, and--

(1) The person other than the surviving spouse makes a qualified disclaimer with respect to such interest; and

(2) The surviving spouse is entitled to such interest in property as a result of such disclaimer, the disclaimed interest is treated as passing directly from the decedent to the surviving spouse. * * *

This Court has similarly reiterated that "a trust that was not eligible initially for a marital deduction may become eligible if the persons with interests in the trust that jeopardize the marital deduction, other than the surviving spouse, effectively disclaim their interests." Estate of Bennett v. Commissioner, 100 T.C. 42, 58 (1993).

Nonetheless, such a disclaimer can be "qualified" and effective for purposes of Federal estate tax law only to the extent that it satisfies the requirements enumerated in section 2518. See sec. 2046. Section 2518 reads in part as follows:

SEC. 2518. DISCLAIMERS.

(a) General Rule.--For purposes of this subtitle, if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person.

(b) Qualified Disclaimer Defined.--For purposes of subsection (a), the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if--

(1) such refusal is in writing,

(2) such writing is received by the transferor of the interest, his legal representative, or the holder of the legal title

to the property to which the interest relates not later than the date which is 9 months after the later of--

> (A) the date on which the transfer creating the interest in such person is made, or

> (B) the day on which such person attains age 21,

(3) such person has not accepted the interest or any of its benefits, and

(4) as a result of such refusal, the interest passes without any direction on the part of the person making the disclaimer and passes either--

> (A) to the spouse of the decedent, or

> (B) to a person other than the person making the disclaimer.

(c) Other Rules.--For purposes of subsection (a)--

(1) Disclaimer of undivided portion of interest.--A disclaimer with respect to an undivided portion of an interest which meets the requirements of the preceding sentence shall be treated as a qualified disclaimer of such portion of the interest.

(2) Powers.--A power with respect to property shall be treated as an interest in such property.

Moreover, in order for the requirement of section 2518(b)(4) to be met, a disclaimer must also be effective under applicable State law. See Estate of Bennett v. Commissioner, supra at 67. Such is demanded by the previously mentioned general rule that legal rights and interests in property, and transfers thereof, are created and determined by State law, but the manner in which these interests are to be taxed is governed by Federal law. See

Helvering v. Stuart, 317 U.S. at 161-162; Morgan v. Commissioner, 309 U.S. at 80. Hence, the interest must have validly passed without disclaimant direction under State law before it will be deemed to have done so for Federal tax purposes. See Estate of Bennett v. Commissioner, supra at 67. Relevant portions of the Georgia disclaimer statute are reproduced below:

53-2-115. Renouncement of succession.

(a) Any person to whom an interest in property is transferred, or who succeeds to an interest in property by contract or by operation of law, or any fiduciary acting on behalf of such person is authorized to and may renounce in whole or in part the succession to any property or interest therein by filing a written instrument within the time and at the place provided in subsection (b) of this Code section. For purposes of this Code section, the term "interest in property" includes any powers over or rights with respect to such property. The instrument shall:

(1) Describe the property or part thereof or interest therein renounced;

(2) Be signed by the person renouncing or by a fiduciary acting on behalf of such person; and

(3) Declare the renunciation and the extent thereof.

*     *     *     *     *     *     *

(c) Unless the decedent or donee of the power has otherwise indicated by his or her will, the interest renounced and any future interest which is to take effect in possession or enjoyment at or after the termination of the interest renounced shall pass as if the person renouncing had predeceased the decedent or, if the person renouncing is one designated to take pursuant to a power of appointment exercised by a testamentary instrument, as if the person renouncing had predeceased the donee of the power. In every case

the renunciation relates back for all purposes to the date of death of the decedent or the donee, as the case may be.

\*     \*     \*     \*     \*     \*     \*

(h) Nothing in this Code section shall be deemed to alter the duties or responsibilities of any fiduciary to act in the best interests of the person or persons the fiduciary represents. However, nothing contained in this Code section shall be deemed to limit the authority granted by this Code section to the fiduciary to renounce an interest in property. [Ga. Code Ann. sec. 53-2-115 (1997).]

A. <u>All Income Payable Annually</u>

We now evaluate the factual circumstances before us in light of the above-quoted statutory mandates. The first requirement specified for a qualified income interest for life is that the surviving spouse be entitled to all income from the property, payable at least annually. See sec. 2056(b)(7)(B)(ii)(I). At minimum then, no interest can qualify for QTIP treatment if any person other than the surviving spouse is entitled to income distributions during the spouse's lifetime. The Item V trust, however, provides a mechanism by which the Lassiter children or their descendants may receive trust income while Mrs. Lassiter is living. The trustee is authorized to make such distributions for the children's support and education. Unless properly disclaimed, these interests will be fatal to the marital deduction.

Each child and potential unborn or unascertained descendant executed, either personally or through a guardian ad litem, a disclaimer renouncing "all rights, title, and interest" to income from the residuary trust during Mrs. Lassiter's life. The parties have stipulated that these disclaimers meet the formal requirements of section 2518 and Ga. Code Ann. section 53-2-115. Since both section 2518 and Ga. Code Ann. section 53-2-115 explicitly permit disclaimers of partial interests, we further conclude that neither statute creates any substantive barrier to the valid renunciation of an income interest in a trust. Regulations promulgated under section 2518 buttress this conclusion by explaining:

> For example, if an income interest in securities is bequeathed to A for life, then to B for life, with the remainder interest in such securities bequeathed to A's estate, and if the remaining requirements of section 2518(b) are met, A could make a qualified disclaimer of either the income interest or the remainder, or an undivided portion of either interest. * * * [Sec. 25.2518-3(a)(1)(i), Gift Tax Regs.]

In addition, we decline respondent's invitation to question the validity of these disclaimers on the grounds that those executed by the guardian ad litem failed to protect the best interests of the beneficiaries. The renunciations endeavor to preserve in excess of $14 million in a trust naming Mr. Lassiter's descendants as the ultimate remainder beneficiaries. Given this potential for future benefit, we are unwilling to find a violation of fiduciary duties. For similar reasons, we are

equally unwilling to construe Mrs. Lassiter's actions in attempting to obtain the increased deduction as a violation of her fiduciary duties as administrator and trustee. On the record before us, we lack any basis upon which to evaluate or second-guess the Probate Court's acceptance of the actions by the fiduciaries.

Hence, we are satisfied that Mr. Lassiter's descendants effectively disclaimed their right to receive trust income during Mrs. Lassiter's life, and thereby cut off the trustee's discretionary power to make such distributions for their support and education.

Because the Item V trust as written establishes only two classes of beneficiaries to whom the trustee may distribute income; i.e., Mr. Lassiter's wife and his descendants, the children's disclaimers leave Mrs. Lassiter as the sole potential recipient. That alone, however, does not necessarily mean she is entitled to all income payable at least annually.

The language of the trust instrument which bears upon this question states that the trustee "shall use such part of the income and/or principal thereof as it may deem necessary to provide for the support in reasonable comfort of my wife". The document also recites Mr. Lassiter's desire that the trustee "in making encroachment for the benefit of my wife to encroach first on the trust created for my wife in Item IV hereof before

encroaching on this trust".  Based on these recitations, respondent maintains that Mrs. Lassiter is not entitled to all income; rather, she is entitled only to so much of the income as falls within the ascertainable standard of what is necessary for her support in reasonable comfort, and any amount in excess thereof is to be accumulated.  Respondent further characterizes Mrs. Lassiter's interest in the Item V trust as secondary and comments that distributions may be made to her only after considering the income and corpus of the Item IV trust.

Conversely, it is the estate's position that in absence of any explicit direction regarding the timing and amount of distributions or the accumulation of income, both Ga. Code Ann. section 53-12-190 (1997) and Friedman v. United States, 364 F. Supp. 484 (S.D. Ga. 1973), establish Mrs. Lassiter's right to all income at least annually.  The estate also argues that the reference to encroachment relates only to distributions of principal and has no impact on Mrs. Lassiter's right to income.

We deal first with this apparent dispute over the effect of the encroachment clause.  In the context of trust law, the term "encroach" is commonly used and understood to refer to invasion of trust corpus or principal.  For example, Ga. Code Ann. section 53-12-250 (1997) is entitled "Disposition of income; encroachment on corpus".  Specifically in the 1970 will, the word is employed in two other instances, each making explicit the connection

between encroachment and trust res.  As regards the Item IV trust and the Item V trust shares to be established for the descendants after Mrs. Lassiter's death, the trustee is "authorized to encroach on the corpus of the property" and "authorized to encroach upon the principal of the share", respectively.  In contrast, encroach is never the verb used in phrases expressly addressing payment of income.  We thus have no basis for deciding that an unconventional sense is meant in Item V(b) and conclude that the instruction is not germane to our discussion of the surviving spouse's income rights.  Accordingly, we move to analysis of whether Georgia law affords Mrs. Lassiter the right to all income at least annually.

The regulations under section 2056(b)(7) which interpret this requirement provide generally that

> The provisions of local law are taken into account in determining whether the conditions of section 2056(b)(7)(B)(ii)(I) are satisfied.  For example, silence of a trust instrument as to the frequency of payment is not regarded as a failure to satisfy the requirement that the income must be payable to the surviving spouse annually or more frequently unless applicable local law permits payments less frequently. [Sec. 20.2056(b)-7(g), Estate Tax Regs.]

The regulations also offer more specific guidance for certain issues by indicating that the principles of section 20.2056(b)-5(f), Estate Tax Regs., apply in determining whether the surviving spouse is entitled to all income.  See sec. 20.2056(b)-7(d)(2), Estate Tax Regs.  Among the principles so referenced is

the one set forth in section 20.2056(b)-5(f)(7), Estate Tax Regs.:  "An interest passing in trust fails to satisfy the condition * * * , that the spouse be entitled to all the income, to the extent that the income is required to be accumulated in whole or in part or may be accumulated in the discretion of any person other than the surviving spouse".  We therefore must decide, in light of State law, whether the Item V trust, as affected by the disclaimers, authorizes accumulation or requires full annual distribution.

Ga. Code Ann. section 53-12-190, upon which the estate relies, provides in relevant part:

53-12-190.  Trustee Duties.

(a) The duties contained in this chapter are applicable except as otherwise provided in the trust instrument, and are in addition to and not in limitation of the common law duties of the trustee, except to the extent inconsistent therewith.

* * * * * * *

(c) The trustee shall distribute all net income derived from the trust at least annually.

Our inquiry thus becomes whether the 1970 will "otherwise provide[s]" within the meaning of the statute.  Unfortunately, research has revealed no opinions from courts located within the State of Georgia which address subsection (c) of Ga. Code Ann. section 53-12-190 and its relationship to subsection (a). However, this statute is the successor to Ga. Code Ann. sections 108-445 and 108-446 (Code 1933), which were construed by the U.S.

District Court for the Southern District of Georgia in <u>Friedman v. United States</u>, <u>supra</u>. These predecessor laws read:

> Where the trust instrument is silent as to the time of distribution of income and the frequency thereof, all trustees of all trusts subject to the laws of this State, whether heretofore or hereafter established, shall distribute all net income derived from the property comprising such trust at least annually, on a calendar or fiscal year basis. [Ga. Code Ann. sec. 108-445.]

> In the case of any trust now in existence or hereafter created where the trust instrument expressly directs or permits net income to be distributed less frequently than annually, the express provisions of such instrument shall govern the time and manner of making distributions of income. [Ga. Code Ann. sec. 108-446.]

> The trust at issue in <u>Friedman v. United States</u>, <u>supra</u> at 484-485, instructed the trustees:

> To pay to my wife, SOPHIE M. BODZINER, such part of the net income as the Trustees may deem necessary to provide for the proper support, comfort and happiness of my wife. Said Trustees shall be authorized to encroach upon the corpus of the trust estate at any time and from time to time in such amounts as they may deem necessary, taking into consideration the income of my wife's separate estate, to provide for the proper support and comfort of my wife.

The question before the court was whether this trust satisfied the all income payable annually requirement of section 2056(b)(5), which parallels that set forth in section 2056(b)(7). See <u>id.</u> at 486. The court queried whether the trust qualified for the marital deduction "where by its terms the entire income from the trust property does not have to be paid annually to the surviving spouse but only such part thereof as the trustees deem

necessary to provide for her 'support, comfort and happiness'".

Id. at 485.  The Commissioner, as here, argued that the amount of income to which the surviving spouse was entitled was limited and that accumulation was permitted.  See id. at 486.

The District Court analyzed the language of the trust instrument in light of the Georgia statutory law and concluded:

> since the trust instrument is "silent" as to time of income distribution, I must perforce read Item XXIV to mean that "the trustees shall pay to my wife all the net income derived from the trust property at least annually".[7] I cannot agree with an interpretation of § 108-446 that would make § 108-445 inoperative here on the theory that the language of the Bodziner trust amounts to express permission to the trustees to distribute net income on a less frequent basis than annually.
>
> * * * The intent of the Act of 1960 (Ga. Code §§ 108-445, 446) was to make discretionary income trusts that are silent as to frequency of payment eligible for the marital deduction.  The requirement of the statute that under such a trust all net income must be paid by the trustees at least annually must be read into the Bodziner trust, delimiting any fiduciary discretion in such respect.

---

[7] The Act of 1960 does not mean that discretionary income trusts have seen their day in Georgia.  Silence of the instrument as to time and frequency of distribution has become a limitation rather than a grant of fiduciary authority.  Such a trust will qualify for the marital deduction.  So the Legislature reasonably conceived.  If the testator does not want it that way, he can recite that it is his express wish that distribution of net income may be on a less frequent than annual basis in the trustee's discretion. * * *
[Id. at 489 & n.7.]

Although we acknowledge that opinions of a U.S. District Court do not constitute binding precedent in this Court, we find it appropriate to give proper regard and weight to interpretations

of State law by local tribunals.  See Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967); Propper v. Clark, 337 U.S. 472, 486-487 (1949); Helvering v. Stuart, 317 U.S. at 162-163.

Friedman v. United States, 364 F. Supp. 484 (1973), reflects that the statutes from which Ga. Code Ann. section 53-12-190 sprang were enacted for the purpose of establishing a default rule by which spousal trusts were able to qualify for the marital deduction absent an unmistakable expression of intent to the contrary.  At the same time, no evidence suggests that the Georgia legislature has since sought to weaken this rule and thereby make it easier for a trust to fall short of deductible status.  The above-quoted sections addressed in Friedman v. United States, supra, were subsequently recodified verbatim in all material respects as subsections (b) and (c) of Ga. Code Ann. section 53-13-53 (Code 1981).  The provisions existed in such form until the comprehensive revision and complete recodification of Georgia trust law which took effect on July 1, 1991, and which enacted Ga. Code Ann. section 53-12-190.  An article explaining the new act by the individual who served as Reporter to the Trust Law Revision Committee which drafted the measure indicates that no substantive change was intended.  See Emanuel, "The Georgia Trust Act", 28 Ga. St. B.J. 95, 97 (1991).  Citing former Ga. Code Ann. section 53-13-53, the article states:  "The Act * * * carries forward the Georgia statute directing the trustee

to distribute net income at least annually in O.C.G.A. § 53-12-190(c)." Id. at 97 & n.40. In contrast, the article highlights and expounds upon alterations in prior law. See id.

Here then is the situation with which we are faced in deciding whether Georgia courts would require annual distribution on the facts before us. In terms of the legal context, we are presented with a State statute that, in connection with its interpretive history, clearly demonstrates a bias on the part of Georgia lawmakers toward enabling trusts to qualify for the marital deduction. Moreover, from a practical standpoint, we address a situation where any accumulation of income by the trustee under an ascertainable standard theory would be pointless.

The descendants have disclaimed their right to all income earned by the trust during Mrs. Lassiter's lifetime. Under the State disclaimer law, they are deemed to have predeceased Mrs. Lassiter as to these sums. The amounts thus can neither be distributed to them while Mrs. Lassiter is living nor be added to the remainder interest they will take after her death. The surviving spouse, or her estate, is the only possible beneficiary of this income. The disclaimers have therefore rendered meaningless any discretion on the part of the trustee to accumulate income.

On balance, we believe that where a standard for

distribution has so been vitiated of any potential for protecting the interests of any other beneficiary, a Georgia court would deem the subject trust instrument to have been rendered silent as to timing and frequency of payment, such that the default rule of Ga. Code Ann. section 53-12-190(c) would require not less than annual payment of all income to the surviving spouse. We so conclude here.

Furthermore, we are equally satisfied that administrative powers granted to the trustee by the 1970 will do not impermissibly negate Mrs. Lassiter's income rights for purposes of the section 2056 deduction. Although the terms of the will authorize the trustee discretionally: (1) To apportion or allocate receipts and payments among principal and income, and (2) to hold unproductive property, regulations provide that neither of these powers is fatal to the marital deduction in circumstances such as those now before the Court.

Section 20.2056(b)-5(f)(4), Estate Tax Regs., contains the following:

> Provisions granting administrative powers to the trustee will not have the effect of disqualifying an interest passing in trust unless the grant of powers evidences the intention to deprive the surviving spouse of the beneficial enjoyment required by the statute. Such an intention will not be considered to exist if the entire terms of the instrument are such that the local courts will impose reasonable limitations upon the exercise of the powers. Among the powers which if subject to reasonable limitations will not disqualify the interest passing in trust are the power to determine the allocation or apportionment of receipts

and disbursements between income and corpus, the power to apply the income or corpus for the benefit of the spouse, and the power to retain the assets passing to the trust.  For example, a power to retain trust assets which consist substantially of unproductive property will not disqualify the interest if the applicable rules for the administration of the trust require, or permit the spouse to require, that the trustee either make the property productive or convert it within a reasonable time.  Nor will such a power disqualify the interest if the applicable rules for administration of the trust require the trustee to use the degree of judgment and care in the exercise of the power which a prudent man would use if he were owner of the trust assets. * * *

Georgia law then supplies the requisite limitations.  The Comment to Ga. Code Ann. section 53-12-190 indicates that subsection (a) imposes the necessary duty of care and diligence:

> Pursuant to subsection (a), a trustee is subject to the duties the common law imposes on trustees, as well as the duties expressly set forth in the Act.  The Committee deemed it unnecessary to catalog the duties of a trustee because the common law has developed them with admirable clarity. * * *

> The common law duties referred to are set forth in detail in the Restatement, Trusts, Second, §§ 169-185.  These duties, and the duties set forth in the Act, may be varied by the trust instrument, see § 53-12-5, supra, except as otherwise provided by law, see, e.g., § 53-12-194 (a), infra, and unless the provision in the trust instrument is violative of public policy. * * * The duty of ordinary diligence, formerly codified at OCGA § 53-13-51 and defined as "that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances" in OCGA § 51-1-2, is now encompassed by § 53-12-190 (a). * * *

Included amongst the referenced common-law materials is 1 Restatement, Trusts 2d, section 174 (1959), which reads:  "The trustee is under a duty to the beneficiary in administering the

trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property".  In addition, Ga. Code Ann. section 53-12-194(a) (1997) provides that "No provision in a trust instrument is effective to relieve the trustee of liability for breach of trust committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary".

Based on these pronouncements, we believe that Georgia courts would limit the trustee's administrative powers to a sufficient extent to prevent their jeopardizing the income beneficiary's interest.  See also Rev. Rul. 69-56, 1969-1 C.B. 224; Rev. Rul. 66-39, 1966-1 C.B. 223 (each sanctioning similar grants of trustee authority in a marital deduction context).  We also note that the above-described powers are set forth in Item XII of the 1970 will and are applicable to "every trust" created by the will.  Accordingly, the trust terms grant to the trustee such powers in managing both the Item IV and the Item V trusts. Yet respondent has stipulated that the Item IV trust qualifies for the marital deduction under section 2056(b)(5), which statute contains an identical all income payable annually element. Respondent has not, however, offered any evidence that the State courts would impose reasonable limitations in the one context and

not the other.  We conclude that Georgia law enables the Item V trust to satisfy the requirement of section 2056(b)(7)(B)(ii)(I).

B.  No Power To Appoint

We turn next to the requirement of section 2056(b)(7)(B)(ii)(II) that no person have a power to appoint trust property to any person other than the surviving spouse.  In addition to the specific references to income addressed in the preceding discussion, several provisions of the Item V trust can be construed generally as granting a power to appoint trust property.  Three such powers may be exercised and given effect during Mrs. Lassiter's life:  (1) The trustee may use principal for the support in reasonable comfort of the surviving spouse; (2) the trustee may use principal for the support and education of Mr. Lassiter's children; and (3) Mrs. Lassiter may direct the trustee at any time to turn trust property over to Mr. Lassiter's descendants or their spouses.  The exercise of a fourth power, Mrs. Lassiter's testamentary power of appointment, would be given effect at her death.

With respect to the trustee's power to distribute to Mrs. Lassiter, regulations again provide specifically that such a power is not inconsistent with the marital deduction:

> An income interest in a trust will not fail to constitute a qualifying income interest for life solely because the trustee has a power to distribute principal to or for the benefit of the surviving spouse.  The fact that property distributed to a surviving spouse may be transferred by the spouse to another person does

not result in a failure to satisfy the requirement of
section 2056(b)(7)(B)(ii)(II). * * * [Sec. 20.2056(b)-
7(d)(6), Estate Tax Regs.]

Hence, the estate's deduction will not be disallowed on the basis

of this power.

Concerning the trustee's power to use principal for the

support and education of the Lassiter children, we find that the

descendants effectively disclaimed any right to receive under

this power. Their situation parallels that recognized for

marital deduction purposes in section 20.2056(b)-7(h), Example

(4), Estate Tax Regs:

Example 4. Power to distribute trust corpus to other
beneficiaries. D's will established a trust providing
that S is entitled to receive at least annually all the
trust income. The trustee is given the power to use
annually during S's lifetime $5,000 from the trust for
the maintenance and support of S's minor child, C. Any
such distribution does not necessarily relieve S of S's
obligation to support and maintain C. S does not have
a qualifying income interest for life in any portion of
the trust because the bequest fails to satisfy the
condition that no person have a power, other than a
power the exercise of which takes effect only at or
after S's death, to appoint any part of the property to
any person other than S. The trust would also be
nondeductible under section 2056(b)(7) if S, rather
than the trustee, held the power to appoint a portion
of the principal to C. However, in the latter case, if
S made a qualified disclaimer (within the meaning of
section 2518) of the power to appoint to C, the trust
could qualify for the marital deduction pursuant to
section 2056(b)(7), assuming that the power is personal
to S and S's disclaimer terminates the power.
Similarly, in either case, if C made a qualified
disclaimer of C's right to receive distributions from
the trust, the trust would qualify under section
2056(b)(7), assuming that C's disclaimer effectively
negates the trustee's power under local law.

Since Ga. Code Ann. section 53-2-115 broadly permits beneficiaries to disclaim "any powers over or rights with respect to such property", we see no grounds for questioning the efficacy under State law of the descendants' disclaimers of rights to corpus. Thus, for reasons analogous to those explained above in connection with the children's right to receive income, we conclude that the disclaimers likewise extinguished the trustee's authority to distribute principal.

As regards Mrs. Lassiter's inter vivos power of appointment, authority of this type is declared by regulation to be incompatible with the definition of a qualifying income interest for life: "For purposes of section 2056(b)(7)(B)(ii)(II), the surviving spouse is included within the prohibited class of powerholders referred to therein." Sec. 20.2056(b)-7(d)(1), Estate Tax Regs. Consequently, this power must be negated by the 1995 disclaimers in order for the Item V trust to be eligible for QTIP treatment.

With respect to the adult, minor, and unborn or unascertained descendants by or on whose behalf disclaimers were executed, the previously quoted Example (4) of section 20.2056(b)-7(h), Estate Tax Regs., supports the conclusion that their renunciations were equally sufficient to extinguish their right to receive under Mrs. Lassiter's inter vivos power. The same would be true for Mr. Smith, Cathy's spouse. However, the

record contains no disclaimers which reference Mrs. Lassiter's power to appoint to other, yet undetermined, spouses of descendants.

Under one potential interpretation of the Georgia disclaimer statute, no further renunciation would be necessary to eliminate Mrs. Lassiter's power to distribute to such contingent spouses. Ga. Code Ann. section 53-2-115(c) specifies that disclaimed interests pass as if the person renouncing had predeceased the decedent. Accordingly, if all descendants are deemed to have died before Mr. Lassiter with respect to the inter vivos power, logic would appear to demand closure at his death of the class of possible spousal appointees.

Nonetheless, we find it unnecessary to rely solely on this interpretation of State law in that we conclude Mrs. Lassiter's disclaimer of her inter vivos power, in her individual capacity, was effective and thereby terminated the interests of all potential appointees. The parties disagree as to whether Mrs. Lassiter's retention of a testamentary power of appointment over the trust invalidated her disclaimer of the inter vivos power. We decide, primarily on the basis of section 25.2518-2(e)(2), Gift Tax Regs., that it did not.

Paragraph (e) of section 25.2518-2, Gift Tax Regs., is entitled "Passage without direction by the disclaimant of beneficial enjoyment of disclaimed interest", and it reads in pertinent part as follows:

(1) In general. A disclaimer is not a qualified disclaimer unless the disclaimed interest passes without any direction on the part of the disclaimant to a person other than the disclaimant (except as provided in paragraph (e)(2) of this section). * * *

If a power of appointment is disclaimed, the requirements of this paragraph (e)(1) are satisfied so long as there is no direction on the part of the disclaimant with respect to the transfer of the interest subject to the power or with respect to the transfer of the power to another person. A person may make a qualified disclaimer of a beneficial interest in property even if after such disclaimer the disclaimant has a fiduciary power to distribute to designated beneficiaries, but only if the power is subject to an ascertainable standard. * * *

(2) Disclaimer by surviving spouse. In the case of a disclaimer made by a decedent's surviving spouse with respect to property transferred by the decedent, the disclaimer satisfies the requirements of this paragraph (e)(2) if the interest passes as a result of the disclaimer without direction on the part of the surviving spouse either to the surviving spouse or to another person. If the surviving spouse, however, retains the right to direct the beneficial enjoyment of the disclaimed property in a transfer that is not subject to Federal estate and gift tax (whether as trustee or otherwise), such spouse will be treated as directing the beneficial enjoyment of the disclaimed property, unless such power is limited by an ascertainable standard. * * *

Given the structure of the foregoing regulation, we believe that subparagraph (1) sets forth the general principle and subparagraph (2) establishes a more specific rule applicable only

to a surviving spouse's disclaimer.  Accordingly, while renunciation of an inter vivos power of appointment but retention of a testamentary power would not, in general, result in a qualified disclaimer, see sec. 25.2518-3(d), <u>Example</u> (<u>9</u>), Gift Tax Regs., a surviving spouse is not so constrained.  So long as the spouse's retained power cannot be exercised in a nontaxable context, the disclaimer is effective for tax purposes.

Section 2044, in turn, expressly provides that the value of any property for which a deduction was taken under section 2056(b)(7) is included in the surviving spouse's gross estate. Consequently, a surviving spouse cannot, by means of a testamentary power of appointment over a QTIP trust, direct beneficial enjoyment of the trust property in a transfer that will not be subject to Federal estate tax.  We therefore conclude that retention of such a testamentary power does not cause the disclaimer of an inter vivos power to fail to satisfy the section 2518 requirement when a QTIP deduction will be taken for the trust to which the powers relate.

Moreover, we note that the foregoing construction harmonizes with section 2056, which explicitly permits a surviving spouse to hold a testamentary power of appointment over a QTIP trust. Since regulations contemplate and case law affirms that disclaimers may be used to enable otherwise ineligible interests to qualify for the marital deduction, see <u>Estate of Bennett v.</u>

Commissioner, 100 T.C. at 58; sec. 20.2056(d)-2(b), Estate Tax Regs., we decline to adopt a rule whereby a spouse attempting to do so is forced to renounce rights allowed by the very terms of the deduction statute.

Here, of the two elements required to establish a qualifying income interest for life and consequent eligibility for the QTIP deduction, we decided above that the first had been met. We then concluded that all interests affecting the second, with the possible exception of Mrs. Lassiter's inter vivos power to appoint to descendants' future spouses, had been properly disclaimed. Because this power is personal to Mr. Lassiter's wife, and because we again have no reason to question its effectiveness under Georgia law, we observe that a qualified disclaimer thereof would parallel the situation approved for QTIP purposes in section 20.2056(b)-7(h), Example (4), Estate Tax Regs. Thus, the effect of our accepting Mrs. Lassiter's disclaimer of her inter vivos power would be to render the Item V trust a deductible interest under section 2056(b)(7). Such deduction, in turn, would cause the property to be subject to Federal estate tax in Mrs. Lassiter's estate. We therefore hold that Mrs. Lassiter made a qualified disclaimer of her inter vivos power over the Item V trust. Her ability to appoint trust property during her life has been extinguished. As a result, there remain no powers over the Item V trust of the type

- 53 -

proscribed by section 2056(b)(7)(B)(ii)(II).  Mrs. Lassiter's interest therein thus constitutes a qualifying income interest for life, and the estate is entitled to a deduction pursuant to section 2056(b)(7).

We conclude with a few brief comments on several of the additional arguments raised by the parties.  First, both respondent and the estate advocate positions regarding the validity of the disclaimer executed by Mrs. Lassiter in her capacity as trustee.  Because impermissible interests in the Item V trust were effectively disclaimed by other renunciations, and because Georgia law eliminates potentially suspect accumulation or administrative powers in these circumstances, the trustee disclaimer is unnecessary for qualification.  To address its validity would be moot.  Due to possible broader implications, however, we do say a few words about respondent's general statement that, in interpreting the 1970 will, we must disregard all of Mrs. Lassiter's actions as trustee, apparently on the grounds that her appointment fails to comply with the terms of Item X of the will.  Respondent seems to maintain that Item X limits the permissible trustee to a corporate entity.  We disagree.

While the will may limit beneficiaries to appointment of a corporate trustee when they choose to exercise their right to remove and replace an acting trustee, the document specifies no

procedures or requirements to be observed in the event of refusal by the initial named trustee to accept the trust.  In contrast, Ga. Code Ann. section 53-12-6 (1997) mandates that "A trust shall never fail for the want of a trustee."  Longstanding judicial precedent then provides that the State courts are empowered to appoint a trustee, see Prince v. Barrow, 48 S.E. 412, 418 (Ga. 1904), and Ga. Code Ann. section 53-12-170(c) (1997) permits the courts to do so on the petition of an interested person.  Since the will here does not purport to restrict judicial authority, and in fact seems to recognize that such exists with the statement regarding "Any successor Executor or Trustee appointed as herein provided, or appointed according to law", we see no reason to question the actions of the Probate Court in appointing Mrs. Lassiter as trustee.

Second, because testator intent is referenced by both parties in a variety of contexts, we mention its role in this litigation.  On one hand, it is axiomatic that construction of a will is to be based on the intent of the testator as can be ascertained therein.  See Ga. Code Ann. sec. 53-2-91 (1997).  It is equally clear in the case at bar that Mr. Lassiter did not contemplate the qualification of the Item V trust for a QTIP election, since section 2056(b)(7), which created the election, had not yet been enacted.  On the other hand, however, disclaimers, which by their very nature operate to modify a

testamentary plan, are recognized under both Federal and State law.  Where, as here, a party seeks to achieve a result uncontemplated by the testator by means of such renunciations, original intent becomes largely irrelevant.  What Mr. Lassiter may have envisioned has little relation to, and offers us minimal assistance in deciding, what interests were ultimately received through operation of the disclaimers and State law.

Third, we observe that cases such as <u>Estate of Bennett v. Commissioner</u>, 100 T.C. 42 (1993), and <u>Estate of Nicholson v. Commissioner</u>, 94 T.C. 666 (1990), cited by respondent for the proposition that lower State court actions do not control Federal tax consequences, do not authorize us to ignore the long-accepted device of beneficiary disclaimers, which we independently have determined to be valid under State and Federal law.

Lastly, because we have found Mrs. Lassiter's interest to fall within the terms of section 2056(b)(7), we need not reach the extent to which policy considerations and substantial compliance theories would justify a deduction for interests not meeting the statutory requisites.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.